And we'll hear argument next in Mishtaku v. Officer Cindy Espada, 15-2265. Mr. Mishtaku, why don't you stand up at the podium? You have five minutes for argument. Let us know when you're ready, Mr. Mishtaku. All set? Great. Hello, everybody. My name is Martin Mishtaku. I am an American of Albanian descent. And not to make light of a serious matter, but on my way here, passing through the 42nd Street 4-5 train line subway, it dawned on me, you know, why do they call it Times Square, right? Time, what time is it? Time is a circle. And as soon as the doors opened, it's like that saying, no disrespect to my peers, but this is what I thought. You know, I was like, who let the herd out, you know? You know what I mean? Like, these people. I don't know if it's the food we eat or something, you know, if it's the GMO or whatever it is. It's addictive, I guess, you know. And, you know, I thought I'm in a bad shape. I thought it was funny, you know, why they call it Times Square. And right there, you know, I was standing in line to get, you know, I was right by the door and I was pushed. I'm a pretty big guy, you know, and I'm going to tell you in a second. And that's one thing, you know, physical appearance. And another thing is the American spirit. You know, I feel that maybe the way the Supreme Court says precedence, you know, it's mutating, the American spirit, you know. And, well, I have a few numbers in mind, 185, 186, 110, 1. I'm going to tell you in a second what that is. Again, I don't know, it's hard. Where do I start? You know, I have in mind, I'm thinking of jurisdiction. I'm sorry, I'm a little bit nervous, you know. It's hard to articulate everything that I feel at this moment. I don't know, where do I start? Before I go to the matter of jurisdiction, sovereignty, republic, natural, unalienable rights, instead of unlimited. Our rights are not unlimited or absolute. I'd like to go to the heart of the law, and this is what I think the American spirit is. And it goes something like this. And I'm thinking of Vernon S. Broderick, you know. Maybe he's a man who, by the way, I forgot I'm nervous. I guess first I wanted to start by saying that I'm a sinner. I was born and I will die a sinner, and I accept Christ as my Lord and Savior. I'm not a very religious guy, but I just wanted that to be known. So yeah, Vernon S. Broderick, district judge. Again, before I get to the matter of jurisdiction, he might be a man that you'd think he'd, you know, follow the law to the letter. But I feel that he's breaking the heart of the law. For example, Thomas Jefferson wrote, when he said that all men are created equal, he said that, of course, I know you've heard this plenty of times, but he said that we hold this truth to be self-evident. And actually, when I wrote my amendment complaint, I was acting on instinct. I didn't know anything about—that's why in my amendment complaint, there's only facts of the situation. I didn't base my defense until later on. And also, you can see in the amendment complaint, the wording is—it was a process for me to understand, you know, what my rights are, where I stand amongst my people. It was a process. That's why in the amendment complaint, I say constitutional rights instead of saying natural, as declared by human rights, secured by the Constitution. We only have a Constitution to secure those rights to—you know, I'm a man—I believe in law and order. But I believe in laws that, again, secure our rights, but the rights—this is how they are defined in the Declaration of Independence. I want to say that— Thank you very much. Just give me one second. I'll give you just ten more seconds. Ten more seconds? Do you have anything else? Yes, I have to say that this is very important. Well, it states that all men are created equal, that they are endowed by their Creator with certain inalienable rights. Among these are life, liberty, and the pursuit of happiness. That to secure—this is the heart of the law—that to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed. That whenever any form of government becomes destructive of this end, it is the right of the people to alter or to abolish it. And it is to new government laying its foundation on such principles and organizing its powers in such form as to them shall seem most likely to affect their safety and happiness. Now, safety— We are—we take an oath to the Constitution. No, no, you don't have to—just hear my argument. No, I understand that. So, thank you very much. I'm going to ask you to sit and let Ms. Friedman— Can I—I would like to finish because I'm trying to—it's very important for me to say what I have to say. Otherwise, I'm going to be off track, and this is going to sound like gibberish. So, if it's possible— All we have is the benefit, Mr. Mishtaku, of what you wrote plus what you've already said. So, we understand your case. No, but this is very important. I said—for example, the subject of jurisdiction, the official power to make legal decisions and judgments. This is a major problem. When I come to the court, I'm stripped of my authority right from the get-go. You see, this is not representation. This is asking to rule over me. And you stand above me. This is jurisdiction right there. You're not standing in a playing field, in an even playing field. You're not standing as my representative. You're standing there as my ruler. And that's why, you know, when I make a motion, I ask for permission. When I want to exercise my right, I have to get a gun license. I don't care about guns. I don't want to touch no guns. I want to say that if you want to strip me of my rights, if you say I'm a threat to public safety, please strip me of my citizenship. You can do that. You can take—you know, I have no problem with that. I love this country. Again, I feel that the government—I said— Mr. Mishtaku. I said 185, Congress, Article 1— Trust me when I tell you that we understand your argument very well. Understanding is one thing. And we have given you— I'm almost finished. You're almost finished? I'm almost finished. When you say you're almost finished, how much more do you have? A few minutes. No, no. One minute. Okay, give me one minute. I will give you one minute. Okay, Article 1, Section— Watch that clock in front of you. You have one minute. Okay? Article 1, Section 5. Clause 8, Article 1, Section 5. I'm sorry. Article 1, Section 8, Clause 5. Article 1, Section 8, Clause 6. Article 1, Section 8, Clause 1. Congress has the power to coin the money, has the power to set the standard. Again, you're not giving me time to contemplate. It's okay. It's fine. There's no problem. I had another— This—I would equate this to the WTC-7. For example, the 9-Level Commission report would have you believe that a structural steel— you don't have to be an engineer, structural engineer—office fire brought down a steel building. Again, can I do it? Thank you very much, Mr. Mushtaq. No problem. Ms. Friedman. Do I have time to also talk to you? No, but please sit down. You can listen to Ms. Friedman. No, I'd rather leave. If you wish to leave, that's your right. Good morning, Your Honor. May it please the Court. My name is Elizabeth Friedman, and I am appearing for the defendants' appellees in this matter. Your Honor, our position is that the district court correctly ruled and correctly granted the city defendants' judgment on the pleadings in this matter. The plaintiff failed to demonstrate any violation of any constitutional right, including any violation under the Second Amendment or the Fourteenth Amendment, as the district court correctly found, and the reasons for the denial of the pistol license are clearly set forth in the notice of disapproval and the appeal after the notice of disapproval, and the district court correctly ruled in favor of the city's dismissing the complaint, the amended complaint. Unless the court has any other questions, we will be happy to rely on the district court's orders and the judgment of dismissal and our brief. Thank you, Your Honor. Thank you very much. We'll reserve the decision. That concludes today's oral argument calendar. Mr. Mushtaq, no? No? You have five minutes. That was it. Thank you very much.